**IN THE UNITED STATES DISTRICT COURT COUNTY
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JR 14, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No.: 4:17-CV-1469 RWS |
| ) | |
| JETCORP TECHNICAL SERVICES, INC. ) | |
| d/b/a FLYING COLOURS CORP., ) | **DEFENDANT DEMANDS** |
| ) | **TRIAL BY JURY OF 12** |
| Defendant. ) | |

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

**COMES NOW** Defendant JetCorp Technical Services, Inc., d/b/a Flying Colours Corp. (hereinafter "Defendant"), by and through its attorneys, and for its Answer to Plaintiff's Complaint states as follows:

I.   PRELIMINARY STATEMENT

1. This is an action to recover approximately $1 million in damages resulting from Flying Colours' negligent pre-purchase inspection of a Lear 45 N708SP aircraft ("the Aircraft") on Plaintiffs behalf. Flying Colours knew or should have known that the engines on the Aircraft were outdated and would need substantial upgrades, but never disclosed such information to Plaintiff. Flying Colours also knew or should have known of other defects in the Aircraft prior to the Aircraft's purchase by JR14 which were not disclosed to Plaintiff.

**RESPONSE: Defendant denies the allegations contained in paragraph 1.**

2. On January 12, 2016, JR14 filed suit against Flying Colours and another inspection service that it hired, Flight Check Business Aviation Services, LLC d/b/a Primestar Aviation ("Flight Check"), in the Circuit Court of Cook County, Illinois (the "Cook County Action").

**RESPONSE:**   **Defendant admits the allegations contained in paragraph 2.**

3. Flying Colours filed a motion to dismiss for lack of personal jurisdiction in the Cook County Action, arguing that it was only subject to the jurisdiction of the Courts of Missouri.

**RESPONSE:**   **Defendant admits the allegations contained in paragraph 3.**

4. Flying Colours' motion was granted on September 12, 2016, dismissing Flying Colours from the Cook County Action. The Cook County Action remains pending against Flight Check. Substantial discovery has now been completed in the Cook County Action.

**RESPONSE:   Defendant admits that its motion to dismiss for lack of jurisdiction was granted.  Defendant does not have sufficient information to admit or deny the remaining allegations contained in paragraph 4 and therefore denies the same.**

5. JR14 brings this action against Flying Colours pursuant to the Missouri Savings Statute. Mo. ANN. STAT. §516.230.

**RESPONSE:   Defendant denies this allegation and further states that the Missouri Savings Statute does not apply as the original action was not filed and dismissed in a Missouri court.**

II.   PARTIES AND JURISDICTION

6. JR14 is a Delaware limited liability company. Its principal place of business is Chicago, Illinois. At all relevant times, its members were Jerry Lasky and Rob Stein, both of whom are residents of the State of Illinois.

**RESPONSE:   Defendant does not have sufficient information to admit or deny the allegations contained in paragraph 6 and therefore denies the same.**

7. Flying Colours is a Missouri corporation. Its principal place of business is located in Chesterfield, Missouri.

**RESPONSE:   Defendant admits the allegations contained in paragraph 7.**

8. Subject matter jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §1332. The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

**RESPONSE: Defendant objects to this allegation as it sets forth a legal conclusion rather than facts as required by applicable law. To the extent that this allegation requires an Answer, Defendant denies the same.**

9. Venue is proper in this District under 28 U.S.C. §1391(a) because Flying Colours' principal place of business is in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

**RESPONSE: Defendant objects to this allegation as it sets forth a legal conclusion rather than facts as required by applicable law.**

III. FACTS COMMON TO ALL CLAIMS

 A. **JR14 Hires Flying Colours to Inspect Aircraft Prior to Purchase**

10. On December 18, 2014, JR14 entered into a purchase agreement with David Instance ("Instance") and Tapetto Magico, Inc. ("Tapetto") to purchase the Aircraft. Section 2(a) of the purchase agreement detailed the specifications of the Aircraft that JR14 would receive:

| | |
|---|---|
| Airframe Manufacturer: | Learjet, Inc. |
| Airframe Model: | 45 |
| Current U.S. Reg. Mark: | N708SP |
| Serial Number | 45-014 (the "Airframe") |
| Engine Manufacturer: | Honeywell |
| **Engine Model:** | **TFE 731-20AR-1B** |
| Engine Serial Numbers | No 1: P-111120 |
| | No. 2: P-111133 |

 (*See* purchase agreement, attached as Exhibit A) (emphasis added).

**RESPONSE: Defendant does not have sufficient information to admit or deny the allegations contained in this paragraph, and therefore denies the same.**

3

11. The purchase agreement also contained a warranty in Sections 7(a)(v) and (vi), warranting that the Aircraft delivered to JR14 would conform to the specifications outlined above.

**RESPONSE: Defendant does not have sufficient information to admit or deny the allegations contained in this paragraph, and therefore denies the same.**

12. A Warranty Bill of Sale was executed by Instance and Tapetto, wherein it was represented to JR14 that the Aircraft was equipped with two (2) Honeywell model TFE-731-20AR engines ("AR Engines"). *(See* Warranty Bill of Sale, attached hereto as Exhibit B).

**RESPONSE: Defendant does not have sufficient information to admit or deny the allegations contained in this paragraph, and therefore denies the same.**

13. JR14 purchased a The Aircraft on January 28, 2015 for approximately $1.8 million ("Aircraft").

**RESPONSE: Defendant does not have sufficient information to admit or deny the allegations contained in this paragraph, and therefore denies the same.**

14. On the date of the purchase, FAA Type Certificate No. T00008WI (the "Type Certificate"), dated January 28, 2010, was in effect. *(See* Type Certificate, attached as Exhibit C).

**RESPONSE: Defendant denies the allegations contained in paragraph 14. The Type Certificate in effect at the applicable time was dated December 13, 2014.**

15. To obtain "type certification" for a specific model of aircraft, the manufacturer submits an application to the FAA or other regulating body, describing that model of aircraft's design, equipment, and other specifications. The FAA or regulating body then reviews the submitted information and determines whether the specifications meet applicable standards. If the FAA or regulating body determines that the design, equipment, and other specifications in the application are sufficient, a "type certificate" is issued. The type

4

certificate thereafter sets the design, equipment, and specification standards for which all aircrafts of that particular model must conform in order to be declared "airworthy." All aircrafts must be declared "airworthy" prior to use.

**RESPONSE:** **Defendant objects to this "allegation" as it sets forth legal conclusions rather than facts as required by Missouri and federal rules. To the extent this "allegation" requires a response, Defendant denies the same.**

16. The Type Certificate was submitted by the manufacturer of the Aircraft to the FAA and approved, certifying that all engines in Learjet Model 45 aircrafts, including the Aircraft, have been upgraded to either AR Engines or TFE-731-20BR engines.

**RESPONSE:** **Defendant does not have sufficient information to admit or deny the allegations contained in this paragraph, and therefore denies the same.**

17. Note 12 of the Type Certificate stated that "the 20R engine is no longer a supported installation. All aircraft engines have been modified to a 20AR or 20BR." *(See* Type Certificate, p. 14). Further, the Type Certificate expressly stated that the appropriate engines for a Learjet Model 45 aircraft are "Two Honeywell [AR Engines] or TFE731-20BR-1B turbofan engine." *(Id., pp. 1, 7).*

**RESPONSE:** **Defendant denies the allegations contained in paragraph 17.**

18. Prior to purchasing the Aircraft, JR14 engaged Flying Colours to perform a pre-purchase inspection of the Aircraft. A copy of the pre-purchase evaluation contract between JR14 and Flying Colours (the "Pre-Purchase Agreement") is attached as Exhibit D.

**RESPONSE:** **Defendant admits the allegations contained in paragraph 18.**

19. JR14 retained Flying Colours to ensure that the Aircraft was in good condition, and to meet the requirements of its lender, US Bank, which required a pre-purchase report from Flying Colours that included, among other things, a complete listing of avionics package, engine times, airframe time and electronic record keeping plan, airworthiness certification,

5

certificate of registration, and any other relevant requirements. JR14 advised Flying Colours of its lender's requirements.

**RESPONSE:** **Defendant admits that it was retained to perform the services set forth in Plaintiff's Ex. D.  To the extent the above sets forth additional services, Defendant denies the same.**

20. Flying Colours performed its inspections of the Aircraft commencing in late December 2014 and continuing through January 2015.

**RESPONSE:** **Defendant admits that it was retained to perform the services set forth in Plaintiff's Ex. D.  To the extent the above sets forth additional services, Defendant denies the same.**

21. Prior to performing its inspection, Flying Colours was aware or should have been aware that the purchase agreement called for JR14 to receive an aircraft equipped with AR Engines. Flying Colours also reviewed the Type Certificate, which stated that all Learjet Model 45 aircrafts contained AR Engines or TFE-731-20BR engines.

**RESPONSE:**  **Defendant denies the allegations contained in paragraph 21.**

22. JR14 paid Flying Colours for its services.

**RESPONSE:** **Defendant admits the allegations contained in paragraph 22.**

B. **Flying Colours Fails to Discover and/or Disclose Material Deficiencies**

23. During the course of its inspection for JR14, Flying Colours reviewed materials and records regarding the Aircraft and represented to JR14 and JR14's lender that the Aircraft conformed to the Type Certificate and was in compliance with manufacturer's inspection and maintenance programs, as well as all Airworthiness Directives and Service Bulletins.

**RESPONSE:** **Defendant admits that it was retained to perform the services set forth in Plaintiff's Ex. D.  To the extent the above sets forth additional services, Defendant denies the same.**

6

24. As discussed above, a type certificate sets the design, equipment, and specification standards for which all aircrafts of a particular model must conform in order to be declared "airworthy." All aircrafts must be declared "airworthy" prior to use.

**RESPONSE:** **Defendant objects to this "allegation" as it sets forth legal conclusions rather than facts as required by Missouri and federal rules.  To the extent this "allegation" requires a response, Defendant denies the same.**

25. Airworthiness Directives (ADs) are legally enforceable regulations issued by the United States Federal Aviation Administration (FAA) in accordance with 14 CFR part 39 to correct an unsafe condition in an aircraft.

**RESPONSE:** **Defendant objects to this "allegation" as it sets forth legal conclusions rather than facts as required by Missouri and federal rules.**

26. Service Bulletins are notices to aircraft operators from a manufacturer notifying them of a product improvement, such as performing certain maintenance to improve the quality and performance of the engines on the Aircraft ("Service Bulletins").

**RESPONSE:**  **Defendant admits the allegations contained in this paragraph.**

27. Had the engines on the Aircraft conformed to the Type Certificate and complied with the Service Bulletins issued by the manufacturer, the Aircraft would have included and been equipped with two AR Engines.

**RESPONSE:** **Defendant does not have sufficient information to admit or deny the allegations contained in this paragraph, and therefore denies the same.**

28. Flying Colours' inspection was demonstrably deficient in several respects. Specifically, Flying Colours should have, but failed to, properly inspect, uncover, identify, and inform JR14 of numerous material deficiencies with the Aircraft during the pre-purchase inspection.

**RESPONSE:**  **Defendant denies the allegations contained in paragraph 28.**

7

29. With regard to the Aircraft at issue, Note 12 of the Type Certificate represented that all Learjet Model 45 aircrafts had been updated to AR Engines or 20BR Engines. Further, the manufacturer of the Aircraft's engines issued Service Bulletins between 2004 and 2014 identifying numerous and significant improvements to the Aircraft's engines that, notwithstanding Flying Colours' representations and/or omissions, had not been complied with.

**RESPONSE: Defendant states the referenced Type Certificate and Service Bulletins speak for themselves.  Defendant denies the remainder of the allegations contained in paragraph 29.**

30. Rather, the Aircraft included and was equipped with two (2) obsolete and unsupportable Honeywell Engine Model TFE-731-20R engines ("R engines") that should have been updated pursuant to the Service Bulletins and Type Certificate years before Flying Colours' inspection.

**RESPONSE:  Defendant denies the allegations contained in paragraph 30.**

31. Flying Colours knew or should have known that (i) JR14 contracted for and expected to receive an aircraft equipped with AR Engines; and (ii) the Type Certificate certified that all Learjet Model 45 aircrafts were now equipped with AR Engines. However, Flying Colours failed to communicate to JR14 that the Aircraft's engines were the obsolete and unsupportable "R" engines, instead of the "AR" engines.

**RESPONSE:  Defendant denies the allegations contained in paragraph 31.**

32. Flying Colours was involved in substantial discussions relating to the issue with the Aircraft's engines. On January 12, 2015, Vic Valdes of Flying Colours wrote an email to Dean Eechaute, Field Service Representative of Bombardier/Lear Jet, stating, "I spoke with Honeywell (Mr. Wolf) and they are telling me that **these engines have not**

8

**been modified to AR's based on the log book records. So Bombardier and the FAA need to come up with a solution for this customer."** *(See* 1/12/15 email from Valdes, attached hereto as Exhibit E) (emphasis added).

**RESPONSE:   Defendant admits the allegations contained in paragraph 32.**

33.    That same day, Jack Wolf, a representative of Honeywell, wrote an email to Mr. Eechaute, stating "[t]alked to Vic [Valdes] and **we both agreed that engines are not 20-AR engines and have not been modified. Bombardier will have to address the [type certificate]."** *(See* 1/1$^2$/$_1$5 email chain, attached hereto as Exhibit F) (emphasis added).

**RESPONSE:   Defendant admits the allegations contained in paragraph 33.**

34.    Mr. Eechaute forwarded on Mr. Wolfs email, stating "[t]hese engines ARE-20R and have not been modified . . . It is not specific to the AR mod. It looks like we will have to do something to modify the [type certificate] on this." (Exhibit F) (emphasis added).

**RESPONSE: Defendant does not have sufficient information to admit or deny the allegations contained in this paragraph, and therefore denies the same.**

35.    On January 13, 2015, Mr. Eechaute sent an email to Kirc Harris of Powerplant & Fuel System Engineering, which evidences Flying Colours' knowledge of the obsolete engines:

> **Talking to the chief inspector at Flying Colours. This issue was not noticed until after the sale of the aircraft. This is now a major issue since the aircraft is not per [type certificate]. The original owner is flying in and there will be a big meeting on this in a couple of hours. Vic Valdes (the chief inspector for [Flying Colours]) feels this could get ugly pretty quickly. On the original time line the plane was supposed to leave with the new owner this Friday. Time is of the essence here.**

*(See* 1/13/15 email, attached hereto as Exhibit G) (emphasis added).

**RESPONSE: Defendant does not have sufficient information to admit or deny the allegations contained in this paragraph, and therefore denies the same.**

9

36. On January 14, 2015, Scott Simpson of Bombardier/Learjet determined that the R Engine was a certified configuration for the Aircraft, and wrote a letter to Vic Valdes of Flying Colours stating that "[t]he TFE731-20R is a certified configuration for the aircraft as the engine is listed on the table on page 1 of the [Type Certificate]." *(See* 1/14/15 letter, attached hereto as Exhibit H).

**RESPONSE:    Defendant admits the allegations contained in paragraph 36.**

37. Notwithstanding Mr. Simpson's determination that the R Engines were technically a legal configuration, Note 12 of the Type Certificate stated that **"the 20R engine is no longer a supported installation. All aircraft engines have been modified to a 20AR or 20BR."** *(See* Type Certificate, p. 14) (emphasis added). Further, the Type Certificate expressly states that the appropriate engines for a Learjet Model 45 aircraft are "Two Honeywell [AR Engines] or TFE731-20BR-1B turbofan engine." *(Id,* pp. 1, 7).

**RESPONSE:    Defendant denies the allegations contained in paragraph 37.**

38. Later on January 14, 2015, Lawrence Sadowski of the FAA wrote an email to Vic Valdes of Flying Colours, stating:

> **Obviously there is an issue with the statement on the [type certificate data sheet] about all engines have been modified and I have been working with the Wichita ACO on this issue. But as far as releasing the aircraft, you are ok there. They are listed on the [type certificate data sheet] as an acceptable engine.**

*(See* 1/14/15 email, attached hereto as Exhibit I) (emphasis added).

**RESPONSE:    Defendant admits the allegations contained in paragraph 38.**

39. Flying Colours failed to timely disclose to JR14 that the Aircraft's engines were the obsolete and unsupportable R Engines instead of the AR engines.

**RESPONSE:    Defendant denies the allegations contained in paragraph 39.**

40. As evidenced by the above correspondence, Flying Colours knew or should have known that JR14 contracted for and expected to receive an aircraft containing AR Engines. Flying Colours also knew or should have known that the Type Certificate represented that the Aircraft was equipped with AR Engines. However, once Flying Colours became aware that the Aircraft's engines were the obsolete and unsupportable R Engines instead of the AR Engines, Flying Colours failed **to** disclose this information to JR14.

**RESPONSE:   Defendant denies the allegations contained in paragraph 40.**

41. Flying Colours failed to advise JR14 at any time regarding the Aircraft's engines.

**RESPONSE:   Defendant denies the allegations contained in paragraph 41.**

42. Flying Colours failed to advise JR14 at any time that the Aircraft was not equipped with AR Engines as represented in the Type Certificate.

**RESPONSE:   Defendant denies the allegations contained in paragraph 42.**

43. Note 12 of the Type Certificate—which states that all Learjet Model 45 aircrafts have been updated to AR Engines or 20BR Engines—was removed from the Type Certificate in February 2015, after JR14 had closed on the purchase of the Aircraft.

**RESPONSE:  Defendant admits the TCDS was revised on 2/19/15.  Defendant does not have sufficient information to admit or deny the remainder of the allegations in paragraph 43 and therefore denies the same.**

      C.    **JR14 Discovers The Deficiencies After Purchasing The Aircraft**

44. In February 2015, after taking delivery of the Aircraft, JR14 engaged the services of Priester Aviation, which performed an inspection of the Aircraft. Its inspection revealed numerous problems and deficiencies (the "Deficiencies") with the Aircraft that were not discovered and/or discussed with JR14 by Flying Colours, including:

11

| DEFICIENCIES |
|---|
| Weight & Balance inaccurate, off by over 1000 lbs. |
| Smoke goggles (emergency equipment) miss-matched and cracked. |
| Data transfer unit inoperable: Made grinding noise first time powered up to a NAV data base load. |
| Life raft out of date and only 4 man capacity. |
| C & D inspections came due less than a month after closing. |
| LH IB seat track damaged. |
| Davtron clock will not dim: Found bad ground on pin 1. |
| Hot liquid container inoperable. |
| Inclinometer inoperable: Found broken pin on back of inclinometer. |
| Aft vanity mirror light inoperable: Found bad power supply. |
| Co-pilots PFD blanked out: Fuzzy and dim screen were noticed by the pilot on departure from pre-buy. Unit completely failed two flights later. |
| EGPWS data base was expired. |
| 406 ELT had to be installed: The installed unit was a hand held unit only. This limited the aircraft to US operations only. |
| Crew seat Shoulder belts fraying. |
| Cabin seat belts not cotter keyed. |
| RH OB baggage panel cracked. |

| DEFICIENCIES |
|---|
| Painted emblem by passenger door. |
| Co-pilot audio box #1 comm. button will not latch. |
| AHRS units slow to spool up and 4 degree split: Replacement of both AHRS unit required due to age of units. |
| Increased gross weight and increased zero fuel weight SB's. |
| Honeywell Phase IV avionics upgrade needed to comply with engine upgrades. |

12

| |
|---|
| All life vests out of date and need recertification. |
| No lap top computer or patch cable for DEEC downloads came with aircraft. |

**RESPONSE:    Defendant denies the allegations in paragraph 44.**

45.    On or about February 2, 2015, JR14 notified Flying Colours of the Deficiencies discovered by Priester Aviation.

**RESPONSE:    Defendant denies the allegations in paragraph 45.**

46.    JR14 also learned from Priester Aviation in or around March 2015 that the Aircraft was not equipped with the AR Engines it had contracted for and that were represented in the Type Certificate as being equipped, **but** contained the inefficient, obsolete Honeywell model R engines.

**RESPONSE:    Defendant denies the allegations in paragraph 46.**

47.    JR14 has incurred significant costs and expenses as a result of Flying Colours' negligent misrepresentations, negligent inspection, and failure to identify basic, material problems with the Aircraft during its inspection.

**RESPONSE:    Defendant denies the allegations contained in this paragraph.**

48.    Flying Colours' conduct caused JR to purchase the Aircraft at a greatly inflated value. JR14 also has been forced to expend significant sums to repair the Deficiencies that Flying Colours failed to uncover and/or disclose.

**RESPONSE:    Defendant denies the allegations contained in this paragraph.**

49.    JR14 brings this lawsuit to remedy Flying Colours' inadequate and deficient inspections and services.

**RESPONSE:    Defendant denies the allegations contained in this paragraph.**

COUNT I - **NEGLIGENCE**

50-58.

**RESPONSE:** **For its response to Count I, please see Defendant's Motion to Dismiss filed contemporaneously herewith.**

COUNT II - **NEGLIGENT MISREPRESENTATION**

59-67.

**RESPONSE:** **For its response to Count II, please see Defendant's Motion to Dismiss filed contemporaneously herewith.**

COUNT **III - BREACH OF CONTRACT**

68.     JR14 realleges and incorporates paragraphs 1 through 67 above as if fully set forth herein.

**RESPONSE:** **Defendant incorporates by reference its answers to paragraph 1 through 67 as if fully set forth herein.**

69.     The Pre-Purchase Agreement constitutes a valid, binding, and enforceable contract between JR14 and Flying Colours.

**RESPONSE:** **Defendant objects to the "allegations" contained in this paragraph as they set forth legal conclusions rather than facts as required by Missouri and federal rules.  To the extent this paragraph requires a response, Defendant denies the same.**

70.     JR14 performed all of its obligations under the Pre-Purchase Agreement.

**RESPONSE:** **Defendant denies the allegations contained in paragraph 70.**

71.     Flying Colours breached its obligations under the Pre-Purchase Agreement by failing to properly inspect the Aircraft in accordance with the terms of the Pre-Purchase Agreement and failing to make proper disclosures to JR14.

**RESPONSE:** **Defendant denies the allegations contained in this paragraph.**

72. Flying Colours' breach of the Pre-Purchase Agreement caused the Deficiencies to go undiscovered by JR14 until after it purchased the Aircraft, including the Aircraft's lack of AR Engines as contracted for and as represented in the Type Certificate as being equipped.

**RESPONSE:   Defendant denies the allegations contained in this paragraph.**

73. Flying Colours' breach of the Pre-Purchase Agreement damaged JR14 in an amount exceeding $100,000.00.

**RESPONSE:   Defendant denies the allegations contained in this paragraph.**

COUNT IV- **BREACH OF THE ILLINOIS
CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT**

74-81.

**RESPONSE:  For its response to Count IV, please see Defendant's Motion to Dismiss filed contemporaneously herewith.**

COUNT V - **BREACH OF THE MISSOURI MERCHANDISING
PRACTICES ACT (IN THE ALTERNATIVE TO COUNT IV)**

82-89.

**RESPONSE:For its response to Count V, please see Defendant's Motion to Dismiss filed contemporaneously herewith.**

**WHEREFORE**, having fully answered Plaintiff's Complaint, Defendant prays that Plaintiff's Complaint be dismissed with prejudice, that its costs be reimbursed, that its attorney's fees be paid and for such other and further relief as this Court deems just and proper.

**AFFIRMATIVE DEFENSES**

1) **In further answer and by way of affirmative defense, Plaintiff has failed to state a claim upon which relief can be granted.**

2) **In further answer and by way of affirmative defense, Defendant states that if Plaintiff sustained any damages, all of which are specifically denied, then such damages were caused by the negligence, fault, acts and/or omissions of third parties to be determined in discovery for which Defendant has no responsibility.**

3) **In further answer and by way of affirmative defense, Defendant states that if Plaintiffs sustained any damages, all of which are specifically denied, then such damages were caused by the negligence, fault, acts and/or omissions of Plaintiffs for which Defendant has no responsibility.**

4) **In further answer and by way of affirmative defense, Defendant states that upon information and belief, Plaintiffs have failed to mitigate their alleged damages, all of which are specifically and generally denied.**

5) **In further answer and by way of affirmative defense, Defendant states that the Agreement between the parties (Ex. D to Plaintiff's Complaint) and the remedies provided for therein should govern Plaintiffs' claims.**

6) **In further answer and by way of affirmative defense, Defendant hereby invokes protection under the Missouri Tort Reform Act (*Missouri House Bill* 393), including but not limited to, the limitation on punitive damages as set forth in RSMo. 510.265.**

7) **In further answer and by way of affirmative defense, Plaintiff failed to satisfy its obligations under the Agreement by failing to timely notify Defendant of any deficiencies with its work.**

8) **In further answer and by way of affirmative defense, Defendant further reserves the right to file additional affirmative defenses as its investigation continues.**

**WHEREFORE**, having fully answered Plaintiff's Complaint, Defendant prays that Plaintiff's Complaint be dismissed with prejudice, that its costs be reimbursed, that its attorney's fees be paid and for such other and further relief as this Court deems just and proper.

        HEPLERBROOM, LLC
By:   */s/ David J. Deterding*
    Theodore J. MacDonald, Jr.    #28465
      e-mail: tjm@heplerbroom.com
    David J. Deterding    #61300
      e-mail: dd3@heplerbroom.com
    Charles N. Insler    #58623
      e-mail: cni@heplerbroom.com
    One Metropolitan Square
    211 North Broadway, Suite 2700
    St. Louis, Missouri 63102
    314-241-6160 telephone
    314-241-6116 facsimile
ATTORNEYS FOR DEFENDANT

## PROOF OF SERVICE

I hereby certify that I electronically filed on this 13th day of June, 2017, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Richard B. Korn, Esq., Fox Galvin, LLC (rkorn@foxgalvin.com); ATTORNEY FOR PLAINTIFF; and
- Christopher E. Kentra, Esq. and Jeffrey B. Greenspan, Esq., Cozen O'Connor (ckentra@cozen.com and jgreenspan@cozen.com); CO-COUNSEL FOR PLAINTIFF.

        */s/ David J. Deterding*